```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY


LOURDES ANDINO,                    :
                                   :   HONORABLE JOSEPH E. IRENAS
           Plaintiff,              :
                                   :   CIVIL ACTION No. 05-5319(JEI)
      v.                           :
                                   :            OPINION
JO ANNE B. BARNHART,               :
Commissioner of Social             :
Security,                          :
                                   :
           Defendant.              :
```

**APPEARANCES:**

JACOBS, SCHWALBE & PETRUZZELLI, P.C.
By: Robert Anthony Petruzzelli, Esq.
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff


OFFICE OF GENERAL COUNSEL
SOCIAL SECURITY ADMINISTRATION
By: Susan Jane Reiss, Esq.
    Stephen Patrick Conte, Esq.
26 Federal Plaza, Room 3904
New York, NY 10278-0004
    Attorneys for Defendant


**IRENAS**, Senior District Judge:

Lourdes Andino ("Andino") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and Section 1634(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), for review of the final determination of the Commissioner of Social Security ("Commissioner"), denying Andino's application for Social Security Disability Insurance

Benefits ("DIB") and Supplemental Security Income Benefits ("SSI").  For the following reasons, the Court will affirm the decision.

**I.**

On February 12, 2003, Andino filed applications with the Social Security Administration (the "SSA") for disability insurance benefits and supplemental security income payments. (R. at 14, 83-85.)  She claimed that she was unable to work beginning August 3, 2002, due to back and neck injuries, a hiatal hernia, and depression.  (*Id.*)  Andino's initial claim was denied on April 15, 2003.  (R. at 52.)  She filed a request for reconsideration on June 9, 2003, which was denied on August 8, 2003.  (R. at 60-64.)  Andino then filed a request for rehearing on August 25, 2003.  (R. at 65.)

The hearing was held before an Administrative Law Judge (the "ALJ") on October 1, 2004, in Voorhees, New Jersey.  (R. at 14.) The ALJ issued a decision on April 27, 2005, holding that Andino had not been "under a disability" at any time since August 3, 2002.  (R. at 21.)  On May 3, 2005, Andino requested review of the ALJ's decision by the Appeals Council of the SSA, which denied her request for review on September 26, 2005.  (R. at 10, 4.)  Andino filed her appeal with this Court on November 9, 2005.

**II.**

Andino is a forty-three year old female. She currently lives in Camden, New Jersey with her son, who is six, and her mother who is sixty-five. (R. at 27-28.) She completed high school and one year of college. She attended vocational school for training related to her previous employment at the Camden County Municipal Utility Authority (the "CCMUA"), where she worked as a sewage pumping station operator. (R. at 28-29, 33.)

Andino claims to suffer from pain in her back, neck, knees, elbows, and ankles as a result of joint arthritis and a hiatal hernia. (R. at 38-39.) She also claims to suffer from poor vision as a result of glaucoma and from depression caused by all her injuries. (*Id.*)

Andino testified at the administrative hearing that she has difficulty driving and performing daily activities because of the constant joint pain and blurred vision. (R. at 36-39.) She can only walk about three blocks without pain and can only sit for about twenty or thirty minutes. (R. at 41-42.) She has difficulty going up and down stairs and cannot pick up her son who weighs approximately thirty-three pounds. (R. at 42.) She can only sleep for four hours at a time because the pain awakens her. (R. at 45.)

Despite these ailments, she cares for her six year old son and sixty-five year old mother by helping with the laundry and

doing the grocery shopping.  (R. at 37, 48-49.)  She also walks or drives her son to school on a daily basis.  (R. at 36-37.)  Andino drove herself to the administrative hearing but stated that she had difficulty finding the court building, despite the fact that she had driven there the previous day.  (R. at 46-47.)  She cannot concentrate and cries almost everyday because of her depression.  (R. at 47-48.)  Andino's previous job at the CCMUA required her to stand and move around for about six hours per day and to lift heavy equipment.  (R. at 33-35.)

The ALJ concluded that Andino was not disabled since she had some functional ability to work.  (R. at 20-21.)  In reaching this determination, the ALJ relied on medical assessments of several doctors beginning on December 31, 2001, and continuing throughout Andino's application and appeals. (R. at 16-21.)  Andino was involved in an automobile accident on August 3, 2002, and subsequently went to the emergency room complaining of neck and lower back pain.  (R. at 16.)   Dr. Dhiraj Panda, a neurosurgeon, examined Andino on August 26, 2002, and noted "[m]otor examinations normal in all 4 extremities" and "neck movement is full range with pain in the extreme of movement." (R. at 16, 293.)  Dr. Panda recommended two weeks of physical therapy after which Andino could return to work.  (R. at 294.)

Dr. Stuart Dubowitch, an orthopedic specialist, evaluated Andino on December 7, 2001, and January 18, 2002, for neck and

lower back pain.  He recommended physical therapy each time.  (R. at 15-16, 276-79.)  Dr. Dubowitch evaluated Andino again on February 5, 2004, noting that she could sit for up to six hours and stand or walk for up to four hours in an eight-hour work day and frequently lift up to ten pounds.  (R. at 17, 542-44.)  Dr. Gary Goldstein, an orthopedic specialist, examined Andino on December 10, 2002 and January 14, 2003, noting in his report dated March 2, 2003, that he does "not feel that she realistically qualifies for Social Security Disability."  (R. at 17, 329-32).  Dr. Goldstein noted in another report dated February 21, 2003, that Andino could lift up to fifty pounds and sit, stand, or walk up to six hours per day in an eight-hour work day.  (R. at 326-27.)  Dr. Richard Balderston, an orthopedic specialist, examined Andino on February 4, 2003, and concluded that her spinal range of motion was "70% of normal" with a normal "[g]ait/stance."  (R. at 17, 347-48.)

　　Dr. Tim Pinsky, an orthopedic specialist, conducted a consultative evaluation of Andino on November 1, 2004, at the request of the SSA.  (R. at 17, 546.)  Dr. Pinsky concluded that Andino had a "decreased range of motion in the cervical spine" but "had variable mobility in the lumbar spine between active and passive range of motion."  (R. at 548.)  Dr. Pinsky opined that Andino could occasionally lift twenty-five pounds and frequently lift twenty pounds.  (R. at 549.)  He further noted that Andino's

5

impairments did not affect her ability to stand, walk, or sit. (R. at 549-52.)

Dr. Young Lee, a psychiatrist, performed a consultative evaluation of Andino on November 1, 2004, at the request of the SSA.  (R. at 17-18, 555.)  Dr. Lee noted, among other things, objective signs of depression, no specific thinking disorders, impairment of interpersonal relationships, and severe psychiatric impairment.  (R. at 557.)

### III.

This Court reviews the decision of the ALJ to determine whether there is substantial evidence in the record to support the ALJ's decision.  *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).  Any finding of fact made by the ALJ shall be conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate."  *Plummer*, 186 F.3d at 427.  Substantial evidence can also be described as "more than a mere scintilla but may be somewhat less than a preponderance of the evidence[.]" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

**A.**

The SSA uses a five-step sequential evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. In *Plummer v. Apfel*, the Third Circuit described the five-step evaluation:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c)). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
> At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. *See* 20 C.F.R. 404.1523.

*Plummer*, 186 F.3d at 428. If a determination about a claimant's

disability can be made at any step in the sequential evaluation, the analysis is concluded without continuing on to any remaining steps. 20 C.F.R. § 404.1520(a)(4).

**B.**

In this case, the ALJ held that Andino had not been "under a disability" at any time through April 27, 2005 (the date of the ALJ's decision). (R. at 20-21.) The ALJ reached this decision after proceeding through the five-step sequential evaluation. Upon review of the record, the ALJ's findings under each step, and thus his final determination, are supported by "substantial evidence" as required under§ 405(g) and *Plummer*.

In the first step, the ALJ found that Andino had not engaged in substantial gainful activity since her alleged onset date of disability of February 12, 2003. (R. at 15.) The ALJ found in the second step that Andino had degenerative disc disease, status post cervical laminectomy,[1] which is a severe impairment under SSA regulations because it limits Andino's ability to perform work-related activities. (*Id.*)

In the third sequential step, the ALJ found that "[n]o treating or examining physician has mentioned findings equivalent

---

[1] Laminectomy is the "excision of the posterior arch of a vertebra." *Dorland's Illustrated Medical Dictionary* (28th ed. 1994).

in severity to the criteria of any listed impairment" with particular attention given to listings 1.00 (musculoskeletal) and 12.00 (mental impairments). (R. at 15.) The ALJ's evaluation under this step was brief; however, the ALJ adequately described the rationale behind his conclusion and noted which listed impairments he considered.

With respect to Andino's residual functional capacity (step four), the ALJ concluded that she "can perform no more than light work," and since her "past work as a sewage station operator was medium to heavy work, . . . she is incapable of returning to her former employment." (R. at 19.) Andino argues that the ALJ failed to properly determine her residual functional capacity in step four and failed to consider all the medical evidence of record in making that determination; therefore, Andino argues that the ALJ's finding of no disability was not supported by substantial evidence. (Pl. Br. at p. 6). The SSA argues that the ALJ's finding of residual functional capacity with the ability to do light work was supported by substantial evidence. (Def. Br. at p. 8).

The ALJ's determination of residual functional capacity with the ability to do light work is supported by the extensive medical evidence in the record, spanning a period of over two years between August 3, 2002 (the alleged date of onset of the disability) and October 1, 2004 (the date of the hearing). (R.

9

at 16-19.)  One of Andino's orhopedic specialists, Dr. Dubowitch, indicated on February 5, 2004, that Andino could sit for up to six hours and stand or walk for up to four hours in an eight-hour work day and frequently lift up to ten pounds.  (R. at 17, 542-44.)  Another orthopedic specialist, Dr. Goldstein, noted in a February 21, 2003, report that Andino could lift up to fifty pounds and sit, stand, or walk up to six hours per day in an eight-hour work day.  (R. at 326-27.)  Dr. Pinsky, an orthopedic specialist, concluded that Andino could occasionally lift twenty-five pounds and frequently lift twenty pounds with no impairment in her ability to stand, walk, or sit.  (R. at 549-52.)  Dr. Lee, a psychiatrist, noted severe psychiatric impairment but his report contained contradictions.  (R. at 557.)  Furthermore, Andino had not received continuous psychiatric treatments for the severe impairment.  (Def. Br. at p. 10).

After making a determination in step four as to the plaintiff's residual functional capacity, the ALJ considered whether Andino could return to her past relevant work.  The ALJ concluded that Andino could only perform light work based on the numerous medical records discussed above.  (R. at 19.)  Andino's past relevant work as a sewage pumping station operator required medium to heavy work; therefore, the ALJ's conclusion that Andino could not return to her past relevant work was based on substantial medical evidence.

Under step five, the ALJ combined Andino's residual functional capacity to perform only light work with her age, education, and work experience to determine that she was "not disabled" as defined under § 202.21 of Appendix 2 to Subpart P of Part 404 - Medical-Vocational Guidelines in the Regulations. After making the determination in step four as to a plaintiff's residual functional capacity, the ALJ may simply apply the Regulations that contain detailed descriptions of what constitutes "disabled" or "not disabled" based on the plaintiff's residual functional capacity, her age, education, and work experience.  The ALJ's conclusion here is supported by substantial evidence.

**V.**

For the aforementioned reasons, the Court will affirm the ALJ's decision to deny Andino's claim for disability and supplemental security insurance benefits.  The Court will issue an appropriate order.


Dated: October 13, 2006.

s/<i>Joseph E. Irenas</i><br>JOSEPH E. IRENAS, S.U.S.D.J.